UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**CHARTIS SPECIALTY INSURANCE COMPANY,** f/k/a American International Specialty Lines Insurance Company,

Plaintiff,

v.

**AMERICAN CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, HOFFMAN CORPORATION,** and **HOFFMAN CONSTRUCTION COMPANY OF OREGON**,

Defendants.

Case No. 3:13-CV-01669-KI

OPINION AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Matthew J. Fink
Charles A. Hafner
Nicolaides Fink Thorpe
Michaelides Sullivan LLP
71 South Wacker Drive, Suite 4400
Chicago, IL 60625

Page 1 - OPINION AND ORDER

Christopher J. Nye
Reed McClure
Two Union Square
601 Union Street, Suite 1500
Seattle, WA 98101-1363

      Attorneys for Plaintiff

Michael E. Farnell
Ian Hale
Parsons Farnell & Grein, LLP
1030 SW Morrison Street
Portland, OR 97205

Patrick J. Wielinski
Cokinos, Bosien & Young
105 Decker Court, Suite 800
Irving, Texas 75062

      Attorneys for Defendants

KING, Judge:

This is an insurance coverage dispute between Chartis Specialty Insurance Company

("Chartis") and American Contractors Insurance Company Risk Retention Group ("ACIG"), both

of which provided insurance policies covering the development of the Meriwether Condominium

Complex.  Together, the two insurance companies settled an underlying lawsuit brought by the

Meriwether Condominium Owners Association against the Developers of the Meriwether.

Chartis seeks a declaratory judgment that the property damage alleged in the lawsuit was caused

by more than one "occurrence," such that Chartis should be reimbursed the $1.6 million it paid to

help settle the lawsuit.  Hoffman Corporation and Hoffman Construction Company of Oregon

(collectively, "Hoffman") successfully intervened as defendants in this dispute and filed a

counterclaim against Chartis for breach of contract.  Pending before me are the parties'

Page 2 - OPINION AND ORDER

cross-motions for partial summary judgment on the sole issue of whether "property damage" was "caused" by more than one "occurrence."

## BACKGROUND

ACIG issued to the Developers a Commercial General Liability Policy, effective April 1, 2006 to November 1, 2006, with a completed operations term extending for 10 years after the completion of the project. The ACIG Policy provides coverage for "'property damage' . . . caused by an "occurrence'" in an amount of $2 million for each occurrence. ACIG Policy 29. Its products-completed operations aggregate limit is $4 million. The policy defines an "occurrence" as "a happening, event, or accident, including continuous or repeated exposure to substantially the same general harmful conditions." ACIG Policy 44.

Chartis issued to Hoffman a Commercial Umbrella Policy, in effect from April 1, 2004 to November 1, 2006, with a completed operations term extending for ten years after the completion of the project. The Chartis Policy lists the Developers as additional Named Insureds. The Chartis Policy provides coverage for "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law . . . because of . . . Property Damage . . . that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world." Chartis Policy 46. The "Retained Limit" is $2 million per occurrence with a $4 million aggregate limit. The Policy defines "occurrence" to mean, in relevant part, "an accident, including continuous or repeated exposure to conditions, which results in . . . Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence." Chartis Policy 50.

The Meriwether developed structural problems, triggering a lawsuit by the Owners Association against the Developers in 2011.  The lawsuit alleged the Developers (not any contractors or subcontractors) failed in their duties as developers to build the Meriwether free from defects.[1]  The Developers allegedly failed in "ensur[ing] that the Meriwether was built free from defects and in a manner so as not to leak or cause property damage."  Chartis' Ex. 3, Compl. ¶¶ 7, 10.  They also allegedly failed to "adequately investigate and ensure that the defects, resultant leaks, and property damage were properly and sufficiently repaired."  Id., Compl. ¶¶ 9, 10.

Many of the defects involved problems with the garage and the roofs.  The Owners Association alleged the Developers failed to properly install and/or repair a concrete waterproofing system in the parking garage built under the condominium structures.  Specifically, the Owners Association alleged the Developers failed to properly install crystalline waterproofing, failed to properly construct the transition between the crystalline waterproofing system and an EPDM waterproofing membrane, and failed to properly construct sufficient control joints.  As a result, the garage developed numerous leaks and cracking in its ceiling.  The Owners Association alleged the Developers also failed to properly install "eco" or "green" roofs.  The specific allegations with respect to the roofs included:  excessive run-off to overflow drains; restricted drainage at main drains; failure to install vegetative free zones around inspection boxes; plant debris and soil medium flushed into storm drainage; placement of mechanical sheet metal and flashing finishes in direct contact with eco roof soil; and plant growth problems.  The

_____

[1]The Owners Association also filed with Arbitration Services an arbitration statement of claim containing similar allegations.

lawsuit identified multiple other miscellaneous defects, including defective fire sprinklers, insulation, and windows and doors.

ACIG and Chartis together paid $3.6 million to settle the lawsuit in February 2013. ACIG paid $2 million[2] and Chartis paid $1.6 million with a reservation of rights.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.      The Chartis Policy Language Controls

Chartis seeks a declaration that the underlying lawsuit involved more than one occurrence.  Thus, its argument goes, ACIG's $4 million aggregate limit applies (as opposed to its $2 million per occurrence limit) and should have been exhausted before Chartis had any

_____

[2]Chartis asserts ACIG contributed $1.8 million to the settlement, but concedes for purposes of the briefing that ACIG's contribution was equivalent to the $2 million per occurrence limit of the ACIG Policy.  Chartis' Reply 4, n.1.  ACIG explains that it and Hoffman together paid $2 million, which included $200,000 that was earmarked for completed repairs.

obligation to make a contribution toward the settlement of the underlying lawsuit.  It claims it

"did not have any obligation to indemnify the Developers, or contribute to the settlement with the

association, unless and until ACIG paid its $4 million products-completed aggregate limit for

compensatory damages which were otherwise covered by the umbrella policy."  Chartis' Mot. for

Partial Summ. J. 5.

As ACIG points out, however, Chartis' argument incorrectly treats the Chartis Policy as

excess to ACIG's policy.  To the contrary, the Chartis Policy is triggered when the "Retained

Limit" has been met and imposes no requirement that other insurance policies be exhausted.

Chartis Policy 46.  Indeed, in a Retained Limit Amendatory Endorsement, Section III.E of the

Policy was revised to read:

> The Retained Limits listed in the Schedule of Retained Limits shall apply whether
> or not the insured maintains applicable underlying insurance listed in the Schedule
> of Underlying Insurance or other insurance providing coverage to the insured
> applicable to a loss.

Chartis Policy 24.[3]  The Retained Limit in the Chartis Policy is $2 million per occurrence and $4

million in the aggregate.  The two policies are not tied to each other.

The question, then, is whether the property damage at the Meriwether Condominium

Complex was "caused by an Occurrence" as that term is defined in the Chartis Policy or, rather,

whether the property damage was the result of more than one occurrence.[4]  Chartis Policy 46.

_____

[3]This language replaced in its entirety the Retained Limit language in Section III.E of the
Policy which previously read that Chartis would be liable for that portion of damages in excess of
either the total of the applicable limits of any underlying insurance providing coverage or the Self
Insured Retention, whichever was greater.  Chartis Policy 48.

[4]As a practical matter, it makes little difference which policy language controls as I would
come to the same conclusion were I to apply the language of the ACIG Policy.

Page 6 - OPINION AND ORDER

II.       Legal Standards for Interpreting Insurance Policy Language in Oregon

Chartis initially directs me to what it characterizes as a persuasive case from the Oregon

Supreme Court, rather than interpreting its policy language.  In Wright v. Turner, 354 Or. 815,

322 P.3d 476 (2014), an action brought by a claimant against her underinsured motorist coverage

insurer, the Oregon Supreme Court examined whether one "accident" or more than one

"accident" occurred when the claimant's vehicle was hit by two different cars in rapid

succession.  Resolution of the number of accidents depended on whether the claimant's injuries

> were incurred in one uninterrupted event, happening, or occurrence or whether an
> initial event, happening, or occurrence was interrupted in some way–such as by
> time or different causal act–permitting a factfinder to conclude that there was
> more than one distinct event, happening or occurrence and therefore more than
> one "accident."

Wright, 354 Or. at 485.

However, in coming to this conclusion, the Oregon Supreme Court approached the

question by construing the uninsured and underinsured motorist *statute*, which had been

*incorporated* into the insurance policy at issue.  Consequently, the Court determined the Oregon

legislature's intent in enacting the statute by examining the law in effect at the time.  The issue in

Wright was one of pure statutory interpretation.  Here, the issue is one of pure policy

interpretation and, as a result, I do not find Wright's examination of the term "accident" to be

helpful.

Indeed, more than twenty years ago, a similar issue involving the number of covered

occurrences initially arose in this court and was certified to the Oregon Supreme Court by the

Ninth Circuit.  At that time, the Oregon Supreme Court directed that:

the number of covered "occurrences" in this case does not begin where the district court appears to have begun, *i.e.,* with case law.  Rather, it begins with an examination of the words of the applicable provisions in the insurance policy, because the court's task in interpreting an insurance policy is to determine the intention of the parties.  The intention of the parties is determined based on the terms and conditions of the policy.

Interstate Fire & Cas. Co. v. Archdiocese of Portland in Or., 318 Or. 110, 864 P.2d 346 (1993)

(internal citations omitted).  Wright makes no mention of Interstate Fire and, accordingly,

Interstate Fire remains controlling.

In short, I must interpret the Chartis Policy to resolve the question posed by the parties'

cross-motions.  The primary rule in construing insurance contracts under Oregon law is to

determine the intent of the parties based on the terms and conditions of the policy.  Hoffman

Const. Co. of Alaska v. Fred S. James & Co. of Oregon, 313 Or. 464, 469, 836 P.2d 703 (1992).

I must interpret the policy from "the perspective of the ordinary purchaser of insurance."  North

Pac. Ins. Co. v. Am. Mfrs. Mut. Ins. Co., 200 Or. App. 473, 478, 115 P.3d 970 (2005).  If a term

is not defined in the policy, the first method of interpretation is the plain meaning of the term.  If

there are two or more plausible interpretations of a term, the court should examine them in light

of the particular context in which the term is used in the policy and the broader context of the

policy as a whole.  If the competing plausible interpretations are still reasonable, the term is

ambiguous and must be interpreted against the drafter of the language.  Hoffman, 313 Or. at

470-75.

III.     Interpretation of "Occurrence" in the Chartis Policy

"Occurrence" in the Chartis Policy is defined as follows:

As respects . . . Property Damage, an accident, including continuous or repeated exposure to conditions, which results in . . . Property Damage neither expected

Page 8 - OPINION AND ORDER

nor intended from the standpoint of the Insured.  All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence.

Chartis Policy 50.  The definition directs that the cause of the property damage is to be viewed "general[ly]," not separated into individual components, and "substantially" the same cause will be viewed as one "occurrence."  Additionally, the property damage caused by an injurious exposure to continuing conditions constitutes a single occurrence.  Putting the definition in the context of the underlying dispute then, an "occurrence" is the continuous or repeated exposure to [the deficiently managed construction], which results in property damage neither expected nor intended from the standpoint of the Developers.  See Interstate Fire & Cas. Co. v. Archdiocese of Portland in Or., 35 F.3d 1325, 1329 (9th Cir. 1994) (under Oregon law, "repeated 'exposure' of the boy to the negligently supervised priest, resulting in injury, . . . provides the basis for indemnification").

Chartis would have me interpret the policy in a vacuum, arguing the Owners Associations' allegations in the underlying lawsuit against the Developers are relevant only to the duty to defend.  However, while the specific legal theory alleged against the Developers may be irrelevant to coverage, Farmers Ins. Group v. Nelson, 78 Or. App. 213, 715 P.2d 492, 494 (1986), coverage is dependent on the scope of the risk against which the insurer agrees to provide indemnity.  Whether Chartis has an obligation to indemnify at all must be "determined on the basis of the ultimate facts . . . that formed the basis for the settlement."  Bresee Homes, Inc. v. Farmers Ins. Exchange, 353 Or. 112, 293 P.3d 1036, 1044 (2012); see also Mutual of Enumclaw Ins. Co. v. Gass, 100 Or. App. 424, 428, 786 P.2d 749 (1990) ("The duty to pay . . . depends on whether the evidence at trial shows that the judgment was entered on a covered claim.").

In this case, to find the ultimate facts forming the basis for the settlement, we must look to the allegations in the underlying lawsuit and any evidence developed in defending or supporting those allegations.  The allegations themselves assert the cause of the property damage was the Developers' failure to ensure the Meriwether was properly developed, and not that the Developers negligently performed any of the work themselves.  The Owners' Association sued only the Developers, and only for their failure as developers and not as contractors or subcontractors.  The lawsuit did not include any allegations that the Developers were vicariously liable for the actions of the contractors or subcontractors.  "[I]n insurance coverage cases, it is the insured's actual conduct, not the imputed conduct of another, that determines coverage." McLeod v. Tecorp Int'l, Ltd., 117 Or. App. 499, 503, n.3, 844 P.2d 925 (1992), modified, 850 P.2d 1163, rev'd on other grounds, 318 Or. 208, 865 P.2d 1283 (1993).[5]

In sum, the only plausible interpretation of the language in the Chartis Policy is that the property damage at the Meriwether Condominium Complex was caused by a single occurrence as a matter of law.[6]

---

[5]Chartis also argues that both the ACIG and Chartis Policies were issued to cover the Developers' work on the Meriwether.  Thus, according to Chartis, my construction renders the aggregate limits in the ACIG Policy meaningless.  Although ACIG gives no specific example of what other liability the Developers could have faced that would constitute a second "occurrence," I speculate that a prospective buyer's "Bodily Injury" from the Developers' operations at the Meriwether (not caused by any construction defects) would constitute a separate occurrence.

[6]Since I resolve the case on the unamended definition of occurrence, I need not reach ACIG's alternative argument that the Chartis Policy contained an amended definition extending the meaning of "one Occurrence" to mean "Property Damage over any length of time[.]"  Chartis Policy 36.

**CONCLUSION**

For the foregoing reasons, I grant ACIG and Hoffman's Motion for Partial Summary Judgment on Number of Occurrences [46] and deny Chartis' Motion for Partial Summary Judgment on Number of Occurrences [17].  The parties are directed to confer and file a joint status report by August 29, 2014 with a proposal for resolving any remaining issues.  If the parties are unable to agree on a path forward, each party should file a status report.

IT IS SO ORDERED.

DATED this _____12ᵗʰ_____ day of August, 2014.


_/s/ Garr M. King_____
Garr M. King
United States District Judge